THE STATE OF KANSAS V. JOHN COPP.

1. GRAND JURY; *Talesmen; Error, Not Assumed.* The statute provides that in case any grand juror fails to attend or is discharged, his place shall be filled by a talesman. (Crim. Code, § 74.) The talesman is to be selected in the discretion of the sheriff; but where the judge gives the sheriff the names of several persons to act as talesmen, and requests him to summon them, and the sheriff complies with the request, and two of the persons thus named and summoned serve upon the grand jury, *held*, in the absence of other proof, the supreme court is not to assume that the district judge acted from any wrong or improper motive in naming the talesmen and in making the request of the sheriff, and therefore it cannot be said that such alleged irregularity in the selection of the talesmen amounts to corruption.

2. —————— *Finding Indictments.* The absence of any member of a grand jury on account of sickness or any other cause will not prevent the other members of the grand jury from finding and returning indictments, provided, of course, there are twelve members left to transact business; but no indictment can be found without the concurrence of at least twelve grand jurors.

3. INTOXICATING LIQUORS, *How to be Sold by Druggist.* Where a druggist has a permit to sell intoxicating liquors, all his clerks and agents may sell the same for him in his drug store, without violating the law ; but such sales must be made in the drug store where the business is carried on and the permit to sell is posted, and the druggist cannot sell, under his permit, intoxicating liquors at any other or different place than the drug store where the permit is posted ; and if any clerk or agent of the druggist sells or barters intoxicating liquors at another and different place from the drug store of the druggist, the permit of the druggist is no protection to such clerk or agent, so unlawfully engaged in the sale or barter of intoxicating liquors.

*Appeal from Wabaunsee District Court.*

ON December 20, 1884, the following indictment was filed against *John Copp*, (court and title omitted:)

"*First Count:* STATE OF KANSAS, WABAUNSEE COUNTY, ss. : At the October term of said court, 1884, the jurors of the grand jury of said county, duly impaneled, sworn and charged to inquire and true presentment make of all public offenses against the laws of the state of Kansas, cognizable by said court, committed or triable within said county, on their oaths do find and present that on the — day of ————, 1884,

in the county of Wabaunsee and state of Kansas, one John Copp, then and there, in a room in a frame building — the said building at the time being occupied by the said John Copp as his residence, and situated near a place called Paxico, in Newbury township, in the county of Wabaunsee and state of Kansas —without taking out and having a permit to sell intoxicating liquors, did unlawfully sell and barter spirituous, malt, vinous, fermented and other intoxicating liquors, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Kansas.

"*Second Count:* And the jurors of the grand jury of the county of Wabaunsee aforesaid, duly impaneled, sworn and charged to inquire and true presentment make of all public offenses against the laws of the state of Kansas, cognizable by said court, committed or triable within the county aforesaid, on their oaths do further find and present that on the — day of ——, 1884, in the county of Wabaunsee and state of Kansas, and within the jurisdiction of this court, the said John Copp did then and there, in a room in a frame building — the said building at the time being occupied by the said John Copp as his residence, and being situate near a place called Paxico, in Newbury township, in Wabaunsee county, state of Kansas — without taking out and having a permit to sell intoxicating liquors, did unlawfully sell and barter spirituous, malt, vinous, fermented and other intoxicating liquors, contrary to the statute in such case made and provided.

[Signed]                          GEO. G. CORNELL,
    *County Attorney of Wabaunsee Co., State of Kansas.*"

[Indorsed]   "The State of Kansas, plf., v. John Copp, deft.   Indictment.   'A true bill.'   C. O. Kinne, foreman. No. 802."

On March 18, 1885, the following plea in abatement, omitting court and title, was filed by the defendant:

"Comes the defendant, John Copp, and files this his plea in abatement in the above cause, and says:

"1st. The grand jury that found and returned said indictment against said defendant was not a legal grand jury; and had no legal existence under the law.

"2d. Said so-called grand jury was not drawn by the clerk as required by law.

"3d. The persons selected to serve on and constitute the said so-called grand jury were not drawn thirty days before the term of the court by which it was ordered.

"4th. Three days' notice was not given to the sheriff and two justices of the peace by the clerk, of the day and hour of calling said so-called grand jury.

"5th. At the time said indictment was found, said so-called grand jury consisted of but thirteen persons.

"6th. Said persons comprising said so-called grand jury were not summoned six days before the term of court.

"7th. Said so-called grand jury was unlawfully packed and corruptly formed and impaneled by the then judge of the third judicial district, with the intent and for the express purpose of finding indictments against persons suspected of selling intoxicating liquors. After fifteen persons had been drawn by the order of said judge to form the said grand jury, the said Judge John Martin arbitrarily, illegally and without excuse, rejected from said drawn panel of fifteen persons three of said drawn panel, viz.: C. Kopeski, Thomas E. Guest and John W. Clark, and said judge arbitrarily, corruptly and illegally caused the sheriff to summon three other persons named by him, the said John Martin, when not on the bench and outside of the court room upon the public streets of Alma, to be summoned and sworn as grand jurors on said grand jury. All the acts of said John Martin as said district judge in connection with said grand jury were illegal, corrupt, and subversive of the law. Wherefore, he prays that said indictment be set aside, dismissed, and held for naught.

"John Copp, being duly sworn, says that he is the defendant in the above-entitled action, and that the matter and facts set forth and contained in the foregoing plea in abatement are true.               [Signed]     JOHN COPP.

"Subscribed in my presence and sworn to before me, this 18th day of March, 1885.

                [Signed]     THEO. S. SPIELMAN, *Clerk.*"

To sustain the plea the defendant introduced Henry Pippert, who testified that—

"In the year 1884 he was sheriff of Wabaunsee county; that at the October term of court for 1884, John Martin, the judge of the court, having excused some of the grand jurors, issued an order to him to summon six additional persons to serve as grand jurors for the term, and gave him the names outside of the court and at or near his boarding-place in Alma, of six persons to serve as jurors for the term, and requested him, as sheriff, to summon these men as jurors; that in pursuance of this request he summoned five of the same as jurors,

and that two of them so summoned served on the grand jury for the term and were of the grand jury that found the indictment against the defendant; that the names so selected by the judge were without any suggestion from the sheriff."

And the defendant, to further sustain his plea, introduced the records of the court, that the grand jury that found and presented the indictment against the defendant was composed of fourteen men only; that one of the grand jurors originally impaneled and sworn was absent at the time the indictment was found and presented, but for what cause, or why absent, the record does not show. Thereupon, the court overruled the plea, the defendant excepting. The defendant then filed the following further plea, omitting court and title:

"1st. The grand jury who presented and found this bill of indictment against this defendant was not a legal or lawful jury, because but thirteen men composed said jury.

"2d. There can be and is no legal court to be held in this county, known as the district court of said county, at this time.

"3d. This court, as now met, convened, and organized, has no jurisdiction at this time to try said cause, or in any manner to determine the controversy involved in this cause, for the reason that there is now no law in force by which a court of this kind can be lawfully held in this county; and because of the change in the law making this the twenty-first district instead of the third judicial district of Kansas; and because of the repeal of the act creating the third judicial district, and the creation of the twenty-first district; and because this court by the law now in force cannot legally entertain the trial of said cause at this time by reason thereof. Wherefore, the defendant objects to being tried at this term of this court, and prays the court now here to take no further cognizance of this cause at this time.                    JOHN COPP.

"Subscribed and sworn to before me, this 18th day of March, 1885.          [Signed]      THEO. S. SPIELMAN, *Clerk*."

The court overruled this plea, the defendant excepting. On the 20th day of July, 1885, and at the July Term of court for 1885, the case came on trial. The defendant, upon being arraigned, pleaded not guilty, and a jury was impaneled to try the case. Before the state had made any peremptory chal-

lenges, one Anton Haag, called as a juror, answered that he knew nothing about the case, and had not formed or expressed any opinion as to the guilt or innocence of the defendant; that he had no prejudice one way or the other; and that he did not think the punishment fixed by the law for the offense was too severe. A few days before, this person, called as a juror, when being examined as to his qualifications in a similar case, answered then that he thought the punishment fixed by the law was too severe. He however stated that he did not fully understand the question and comprehend its meaning when interrogated in the first instance; and that his opinion had become changed since his examination, and he now thought the punishment not too severe. The state challenged this juror for cause. The defendant objected to the challenge, but the court sustained the same, and set the juror aside. The defendant excepted. The jury returned a verdict against the defendant of not guilty upon the first count in the indictment, but guilty as charged in the second count. The defendant filed a motion for a new trial, which was overruled. He was sentenced to pay the sum of $200 and all costs, and to stand committed to the jail of Wabaunsee county until the fine and costs were paid. He appeals.

*A. H. Case*, for appellant.

*W. A. Doolittle*, county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: The appellant—defendant below—was indicted by a grand jury at the October term of the district court for Wabaunsee county, for the year 1884, for selling intoxicating liquors in violation of the prohibitory liquor law. At that time Wabaunsee county was a part of the third judicial district, which then embraced the counties of Shawnee, Pottawatomie, Riley, and Wabaunsee. The defendant gave bail for his appearance at the next term of the district court of Wabaunsee county, which then, by law, was to convene on March 2, 1885. (Laws of 1883, ch. 93.) Before the time for

the convening of the district court in March, 1885, the twenty-first judicial district was created, composed of the counties of Pottawatomie, Riley, Wabaunsee, and Osage, and thereby the terms of the district court of Wabaunsee county were changed, so that the first session of the district court for that county for 1885, under the provisions of the act creating the twenty-first judicial district, was to convene in that county on the second Monday of July, 1885 — July 13th. (Laws of 1885, ch. 139.) However, in pursuance of an adjournment of the October term of the district court for Wabaunsee county for 1884, the district court of that county convened on March 16, 1885. At this session of the court the defendant made a motion to quash the indictment. Counsel in his brief does not point out specially any defects in the indictment, and we are not advised in what particulars he claims it to be fatal. Our examination convinces us that the motion to quash was properly overruled, as the indictment appears to us to be sufficient in form. The defendant filed a plea in abatement, setting forth various defects and irregularities in the selection and drawing of the grand jury; also, that after fifteen persons had been drawn to form the grand jury, the district judge illegally and without excuse rejected three persons therefrom, and arbitrarily and corruptly caused the sheriff to summon three other persons to act in their places. The plea further stated that at the time the indictment was found, the grand jury consisted of thirteen persons only. We have already held that no plea in abatement, or other objection, can be taken to any grand jury duly charged and sworn, for any alleged irregularity in their selection, unless the irregularity, in the opinion of the court, amounts to corruption. (Crim. Code, § 79; *The State v. Skinner,* ante, p. 256.) The question therefore arises upon the record, whether the alleged irregularities in the selection of the grand jury, or any members thereof, amounted to corruption; and further, whether the grand jury finding and returning the indictment had sufficient members to constitute a legal grand jury.

The evidence offered in support of the plea shows that the

district court excused some of the persons summoned to serve
as grand jurors; but nowhere does it appear that these persons
were irregularly, arbitrarily, illegally, or improperly rejected.
We must assume, in the absence of evidence to the contrary,
that the persons excused or discharged were so excused or dis-
charged for good and sufficient reasons. The statute provides
that in case any grand juror fails to attend, or is discharged,
his place shall be filled by a talesman. When the panel of a
grand jury is not filled by persons drawn and summoned by
order of the court, talesmen are to be selected in the discretion
of the sheriff. In this case, the district judge gave to the
sheriff the names of six persons to serve as grand jurors in
the place of those discharged, and requested the sheriff to
summon them. Two of the persons so summoned served
upon the grand jury that found the indictment against the de-
fendant. The action of the district judge in giving to the ·
sheriff the names of persons to act as talesmen and requesting
him to summon such persons was irregular, as neither the
district judge nor the district court has the power to control
the sheriff in this discretion, unless expressly authorized by
the statute; yet we are not to assume, in the
absence of proof, that the district judge acted
from any wrong or improper motive; and there-
fore we cannot say that the alleged irregularity in the selection
of the jurors amounted to corruption. In civil cases, where
there are not jurors enough to form a panel in any cause, and
either party to such cause, by himself or his attorney, shall so
request, it is the duty of the district judge to select the jurors
and cause a venire to issue for the persons so named by him.
(Laws of 1876, ch. 104, § 6.)

1. Grand jury;
talesmen;
wrong motive,
not assumed.

We lately held in *The State v. Skinner*, supra, that a plea in
abatement, being a dilatory plea, is not to be favored; that
it must be pleaded with strict exactness, and be certain to every
intent. Applying this rule of interpretation to the exception
taken to the grand jury on account of insufficient numbers, we
must consider the plea to refer to the grand jury at the time
the indictment was found and presented, and not to the grand

jury as originally summoned and sworn. The plea nowhere
states that there were not fifteen grand jurors summoned and
sworn for the October term of court for 1884. The indict-
ment alleged that at that term of court a grand jury for Wa-
baunsee county was "duly impaneled, sworn, and charged."

The evidence which the law requires to show a concurrence
of the requsite number of the grand jury in finding the in-
dictment is, the indorsement of a "true bill" thereon, and
the signature thereto of the foreman. (Crim. Code, § 95;
*Laurent v. The State,* 1 Kas. 313.) The indictment on its face
shows it to be the act of the grand jury; that is, the concur-
rence of at least twelve grand jurors. Anciently the accusing
body consisted of twelve only. The legislature of this state
has fixed the number of persons to be summoned and sworn
as a grand jury at fifteen. (Crim. Code, § 74.) An indictment
may be found with the concurrence of twelve grand jurors.
(Crim. Code, §§ 95, 96.) The evidence offered in support of
the plea in abatement tends to show that one of the persons
originally impaneled and sworn as a grand juror was absent
at the time the indictment was found and presented against
the defendant. For what cause, or why absent, the record
does not disclose. We think the absence of any member of

2. Indictment
may be found,
though a grand
juror absent.

a grand jury on account of sickness, or any other
cause, would not prevent the other members of
the grand jury from finding and returning in-
dictments, provided, of course, there were twelve members left
to transact business. For an elaborate discussion of this ques-
tion, see the opinion of Judge Dillon, in *The State v. Ostrander,*
18 Iowa, 435. See also *The State v. Miller,* 3 Ala. 343;
*Johnson v. The State,* 7 S. & M. 58; Wharton's Crim. Pl. &
Pr., 8th ed., § 341; *The State v. Brainerd,* 66 Vt. 432 — 48 Am.
Rep. 818.

After the court decided adversely to the plea in abatement,
the defendant filed a plea to the jurisdiction of the court, al-
leging in substance that the March term of court was being
held without authority, because of the creation of the twenty-
first judicial district and the repeal of the act forming the third

34 — 34 KAS.

judicial district. It is not necessary for the purposes of this case to decide whether the March term of the district court of Wabaunsee county for 1885 was legally held. The defendant was not tried until the July term of court for 1885, and that term of court was convened in accordance with the express provisions of the statute of 1885 creating the twenty-first judicial district.

There was no error in excusing the grand juror Anton Haag. A trial court has very extensive and almost unlimited discretion in discharging a person called to serve on a petit jury, who might, in the opinion of the court, not make the fittest or most competent person to serve. (*The State v. Miller*, 29 Kas. 43.)

The indictment charged the defendant with selling intoxicating liquors without having a permit, in the room of a frame building occupied by him as a residence, situated near a place called Paxico, in Newbury township, in Wabaunsee county, in this state. The testimony introduced by the state tended to establish all the allegations of the indictment; and the defendant, after introducing evidence tending to show that Dr. Bartley Smith had a permit to sell intoxicating liquors for medical, scientific and mechanical purposes, in Paxico, and that he was operating a drug store in that place at the date of the alleged sales, offered evidence that his own residence or dwelling house was between 100 and 200 yards from the drug store of Dr. Smith; and thereupon he offered to prove that he sold or delivered intoxicating liquors at his residence as the clerk or agent of Dr. Smith. We have already held that "where a druggist has a permit to sell intoxicating liquors, all his clerks and agents may sell the same in his drug store without violating the law." (*The State v. Hunt*, 29 Kas. 764.) But in this case, no attempt was made to show that the defendant made the sales of liquor complained of in the drug store of Dr. Smith. On the other hand, it was shown that Dr. Smith had no cellar under his drug store and no safe place under his general store to keep intoxicating liquors; and it was further shown that as the defendant had a good cellar

under his residence, intoxicating liquors were kept there. Now the defendant had no right, as clerk or agent of Dr. Smith, under his permit, to sell intoxicating liquors at his own residence between 100 and 200 yards from Smith's drug store; and no offer was made by the defendant to show that there was any actual sale made at the drug store of Dr. Smith of the intoxicating liquors stored in the cellar of defendant.   Neither Dr. Smith nor his clerks could lawfully sell intoxicating liquors under his permit at any other place than at his drug store.   The statute expressly provides that "said permit shall be posted in a conspicuous place in the store where such business is carried on." (Laws of 1881, ch. 128, § 2.)   Dr. Smith could not, under his permit, pretend to sell intoxicating liquors in his drug store and give orders upon another person occupying a different building to deliver to the purchaser liquors from bottles, kegs or barrels where no separation of the liquors was made at the time of the alleged sale in the drug store, and no specific bottle, keg or barrel was sold or referred to, pointed out or marked.   It is only when the terms of sale are agreed on, the bargain struck, and everything the seller has to do with the goods or articles is complete, that the contract of sale becomes absolute as between the parties, without actual payment or delivery. (*Lowry v. Stewart,* 5 Kas. 663; *Haug v. Gillett,* 14 id. 140; *McCarty v. Gordon,* 16 id. 35; *Caywood v. Timmons,* 31 id. 394.)

*3. Intoxicating liquors—how to be sold by druggist, how not.*

Several of the instructions asked by the defendant and refused by the district court state correct propositions of law, but as there was no evidence before the court tending to show that the defendant made the sales of intoxicating liquors complained of, in the drug store of Dr. Smith, the instructions were properly denied; and all evidence tending to show that the defendant made sales of intoxicating liquors at his own residence under the permit of Dr. Smith, as his clerk or agent, was inadmissible.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.