No. 26,287.

LUCY DRESSEL ROSEBERRY, *Appellee*, v. SAMUEL W. SCOTT, *Appellant*.

SYLLABUS BY THE COURT.

1. FRAUD—*Evidence—Sufficiency as Against Demurrer*. After an examination of the evidence, it is held that the court was justified in overruling the demurrer thereto.

2. DAMAGES—*Exemplary Damages—Cause Arising in Another State*. Punitive damages may be recovered on a cause of action which arose in Missouri where such damages may be recovered on a similar cause of action arising in this state.

3. LIMITATION OF ACTIONS—*Evasion of Process—Evidence*. There was evidence sufficient to show that the defendant had so absconded from his place of residence, first in Missouri and then in Kansas, and so concealed himself as to prevent the statute of limitations running against the action commenced by the plaintiff.

4. CONTINUANCE—*Illness of Parties—Duty as to Deposition*. It was not error to refuse to grant a continuance which was asked on the ground that the defendant, a nonresident, was sick and unable to attend, where no effort was made by him to have his deposition taken and where he endeavored to prevent his deposition being taken by the other side.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed April 10, 1926. Affirmed.

*J. W. Parker*, of Olathe, *O. H. Dean, R. B. Thomson* and *Carl L. Crocker*, all of Kansas City, Mo., for the appellant.

*W. D. Morrison*, of Olathe, *C. W. Prince, E. A. Harris* and *James N. Berry*, all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued for $500 actual and $3,000 punitive damages caused by the defendant's fraudulent sale to her of two shares of worthless stock in the Mexican Gulf Land and Development Company. Verdict and judgment were rendered in favor of the plaintiff for $1,000, and the defendant appeals.

1. At the close of the evidence for the plaintiff, the defendant

Appeal and Error, 4 C. J. p. 809 n. 32, 34. Conflict of Laws, 12 C. J. pp. 438 n. 43, 453 n. 23. Continuances, 13 C. J. pp. 123 n. 14, 142 n. 55; 42 L. R. A. n. s. 668; 6 R. C. L. 562. Courts, 15 C. J. p. 1181 n. 55. Damages, 17 C. J. pp. 719 n. 33, 977 n. 41, 983 n. 71, 988 n. 23. Evidence, 22 C. J. pp. 151 n. 95, 154 n. 6. Fraud, 27 C. J. p. 73 n. 57. Limitation of Actions, 37 C. J. pp. 990 n. 71, 1250 n. 83.

demurred thereto. The demurrer was overruled. He urges that "the demurrer to the evidence should have been sustained," and says:

"By an examination of the petition it is manifest that all the allegations relied upon to establish fraud are:

"1. That Mexican Gulf Land and Development Company was organized in violation of law.

"2. That said company had no capital.

"3. That said company failed to qualify to do business in the state of Missouri.

"4. That it was represented to the plaintiff that the stock purchased by her was fully paid.

"5. That it was represented to plaintiff that said company owned 75,000 acres of valley land in Mexico and government concessions in connection therewith."

There was evidence which tended to show that the defendant with others, all residents of the state of Missouri, procured the incorporation of the Mexican Gulf Land and Development Company under the laws of Arizona, capitalized at one million dollars; that the company after its organization maintained an office in Kansas City, Mo., where its business was transacted; that some of the meetings of the corporation were held in Arizona; that the company never qualified to do business in the state of Missouri; that the statutes of Missouri provided that "the secretary of state should not issue a certificate in cases where residents of Missouri organize a corporation in a foreign state for the purpose of avoiding the laws of the state of Missouri," and "that the stocks or bonds of a corporation shall be issued only for money paid, labor done or money or property actually received, and that all fictitious issues shall be void"; that the plaintiff purchased the stock in Missouri; that when she purchased the stock it was represented to her that the stock purchased by her was fully paid; that that representation was not true; that it was represented to the plaintiff that the company owned 75,000 acres of valuable land in Mexico and government concessions in connection therewith; that the company did not own outright the 75,000 acres of land, but the ownership of the company was qualified by rights and liens in the land held by the defendant; and that the capital of the company consisted of whatever right it had in the 75,000 acres of land which, there was some evidence tending to show, was worth $3 an acre. There was other evidence which tended to show that sometime after the purchase

of the stock, the plaintiff was induced by some representative of the company to surrender her stock for the purpose of procuring a deed to ten acres of land in Mexico, and that the defendant absconded and concealed himself for the purpose of avoiding service of process.

In *Booth v. Scott*, 276 Mo. 1, a case against this defendant arising in Missouri out of a sale of stock in the same Mexican Gulf Land and Development Company under circumstances similar to those in the present action, part of the syllabus reads:

"That an Arizona corporation formed by residents of this state was formed for the purpose of avoiding the laws of this state is shown by the fact that its articles of association contained provisions that its principal place of business outside of Arizona shall be Kansas City, Mo., at which place meetings of the board of directors shall be held and any and all business of the corporation transacted; that its capital stock is to be paid into its treasury at such times as its board of directors shall direct, either in cash or by the sale and transfer to it of real or personal property, or by services rendered; that the shares so issued shall be fully paid and nonassessable; that the amount of stock is to be one million dollars, of which one-fourth is to be preferred, bearing interest at the rate of seven per cent per annum, the par value being payable five years from date of issue and to constitute a lien on all the property of the corporation; and by the fact that the only purpose for which an office or agent was required in Arizona was to provide opportunity for service of process there; and by the further fact that the corporation was formed for the purchase of a tract of land in Mexico from one of its incorporators without the payment of any part of its capital stock, and that two-thirds of the common stock, or one-half the entire capitalization, was to be taken, without any payment whatever, by the incorporators, while the other third was to be given as a bonus to purchasers of preferred stock at par. The law presumes that one intends the necessary and obvious consequences of his acts.

"A foreign corporation formed by residents of this state for the purpose of avoiding the laws of this state is forbidden by statute to transact business in this state, and if it attempts to transact business in this state its incorporators become liable as partners for its debts."

The court was justified in overruling the demurrer to the evidence.

2. The defendant argues that it was error for the court to submit to the jury the question of punitive damages. The cause of action arose in Missouri. It is urged that under the laws of this state punitive damages will not be allowed on a cause of action which originated in Missouri. Punitive damages are allowed in Kansas on similar causes of action arising in this state. In *Cady v. Case*, 45 Kan. 733, 26 Pac. 448, this court declared that:

"The cases of *Malone v. Murphy*, 2 Kan. 250; *Wiley v. Keokuk*, 6 Id. 94, and other similar decisions in this court, holding that whenever the elements of

fraud, malice, gross negligence, or oppression mingle in the controversy, the law allows the jury to give what is called exemplary or vindictive damages, followed." (Syl. See, also, *Nevins v. Nevins,* 68 Kan. 410, 416, 75 Pac. 492; *Winkler v. Bank,* 89 Kan. 279, 281, 131 Pac. 597; *Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912; *Cheesman v. Felt,* 92 Kan. 688, 693, 142 Pac. 285.)

In *Woolacott v. Case,* 63 Kan. 35, 64 Pac. 965, the court said:

"The laws of a sister state, in the absence of proof, will be presumed to be the same as our own, and this presumption extends to the statutory as well as the common law of such state." (See, also, *Bershears v. Nelson,* 80 Kan. 194, 195, 101 Pac. 1011; *Newton v. Insurance Co.,* 95 Kan. 427, 434, 148 Pac. 619; and *Bice v. Nelson,* 105 Kan. 23, 27, 180 Pac. 206, 181 Pac. 558.)

Punitive damages are allowed in Missouri in actions of this character arising in that state. In *Albers v. The Merchants' Exchange of St. Louis,* 138 Mo. 140, 159, the supreme court of that state said:

"It is certainly desirable that we should have definite and well defined rules as to the elements and measure of damages. The amount a party is to recover for a legal wrong ought not to be left to the caprice of a jury when his damages can be estimated according to definite rules of law. Compensation for actual loss is the professed object of the law, except when there has been fraud, oppression, or malice. In these latter cases the jury are allowed to give punitive or exemplary damages."

In *Matheson v. Railroad Co.,* 61 Kan. 667, 60 Pac. 747, this court said:

"The Missouri statute giving a right of recovery for death caused by the neglect or wrong of another is so far penal in its nature, and so dissimilar in its provisions to the Kansas statute authorizing a recovery for death by wrongful act, that it is not enforceable in the courts of Kansas." (Syl.)

"Upon the grounds of comity, a cause of action arising in one state under a statute may be asserted in another where the latter gives the same right of action, and there is a substantial similarity in the statutes of the two states. If the Missouri statute is penal in its nature, and the right of recovery given by it is inconsistent with the policy and laws of this state, the action is not maintainable, and the decision of that question is controlled by former adjudications of this court." (p. 668.)

"It is true that it is not necessary that the statutes of the two states should be exactly alike, but there must be a substantial similarity." (p. 670.)

The courts of this state will not enforce the penal laws of any other state (*Dale v. Railroad Co.,* 57 Kan. 601, 47 Pac. 521; *Rochester v. Express Co.,* 87 Kan. 164, 123 Pac. 729; *Machinery Co. v. Smith,* 87 Kan. 331, 335, 124 Pac. 414; *Slater v. Railway Co.,* 91 Kan. 226, 231, 137 Pac. 943), but causes of action arising in another state will be enforced in this state unless to do so would be contrary to the laws of public policy of Kansas.

In 15 C. J. 1181 it is said:

"Under principles of comity the courts of one state . . . will enforce rights arising in other states, unless recognition thereof would be contrary to the laws or public policy of the state in which such enforcement is sought."

There is nothing in the right of the plaintiff to recover punitive damages that is in any way antagonistic to the public policy or the laws of this state. The actual damages sustained by the plaintiff for the wrongful acts of this defendant are recoverable under the laws of this state, and with those actual damages the plaintiff could have recovered punitive damages if the acts had been committed in this state.

In Minor on Conflict of Laws, section 198, it is said:

"With respect to punitive damages also, if the case is one for which such damages may be given in the discretion of the jury under the *lex delicti*, that law will govern the legal right to demand such damages in another state, unless the *lex fori* should expressly prohibit punitive damages, or the enforcement of the *lex delicti* in this respect would contravene an established policy of the forum. This is a substantive right, not a mere matter of remedy."

The court did not err in submitting to the jury the question of punitive damages.

3. It is urged that the action was barred by the statute of limitations at the time it was commenced. The sale of the stock was made in Missouri in May, 1909. This action was commenced December 18, 1923. The Missouri statutes of limitations were pleaded and introduced in evidence. One of those statutes provided "that in an action for relief on the ground of fraud, the cause of action shall not be deemed to accrue until the discovery by the aggrieved party within ten years of the facts constituting the fraud," and "that when any cause of action accrues against any resident of Missouri and he is absent therefrom, that such action may be commenced within the time limited, after the return of such person into the state." It was alleged, and there was evidence which tended to prove, that the defendant had moved from the state of Missouri into the state of Kansas, where he lived a portion of the time after the transaction complained of in this action; that during a large portion of the time thereafter, the defendant absconded from both Missouri and Kansas and concealed himself for the purpose of avoiding the service of process; and that the fraud was not discovered until in January, 1919. These allegations and the evidence to support them take this action out of the operation of the statute of limitations.

4. It is urged that error was committed in not granting a continuance on the application of the defendant. The action was tried in September, 1924. At the previous term of court a stipulation had been entered into between the plaintiff and the defendant, at the request of the latter, that the case should be continued to the September term of court and be tried at that term. The defendant as a ground for continuance showed that he was in California sick, and for that reason could not attend the trial. No showing was made of any effort to have his deposition taken. The evidence tended to show that he made every possible effort to prevent the other side from obtaining his deposition. The court had some discretion as to whether or not a continuance should be granted. (*Bliss v. Carlson,* 17 Kan. 325; *Nelson v. Hoskinson,* 106 Kan. 601, 604, 189 Pac. 165.) There was no abuse of that discretion in refusing to grant a continuance on the application that was made.

The judgment is affirmed.